UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEARNING CARE GROUP, INC.,

        Plaintiff,        CASE NO. 17-11374
                                      HON. DENISE PAGE HOOD
v.

PRECIOUSTATUS, LLC,

        Defendant.
                                      /

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER [#5]

**I.    BACKGROUND**

On April 28, 2017, Plaintiff Learning Care Group, Inc. ("LCG") filed a Complaint against Defendant PreciouStatus, LLC ("PS") alleging claims for declaratory judgment, anticipatory breach of contract, unjust enrichment (in the alternative), and restraining order and injunctive relief. (Doc # 1) On May 3, 2017, LCG filed a Motion for Temporary Restraining Order. (Doc # 5)

LCG operates over 800 childcare facilities and provides childcare and educational services utilizing technology to provide parents and guardians with instant, real-time updates and emergency notifications about the children under LCG's care. PS provides a hosted software application (the "Monitoring Service") through which childcare facilities can provide these instant updates and

1

notifications. On November 16, 2015, LCG and PS entered into a Licensing Service Agreement (the "Agreement") under which PS was to provide the Monitoring Service to LCG for use in LCG's childcare facilities.

The Agreement specifies a term of November 16, 2015 through May 31, 2017 and states that "[i]f Services under an applicable Scope of Work extend beyond the one term of the Agreement, or any renewal term, the Agreement will continue with respect to that Scope of Work until the completion of the Services described in that Scope of Work." The Agreement also states that a "Scope of Work may be terminated by either Party for its convenience at any time by giving the other Party forty-five (45) days' advanced written notice." The Scope of Work ("SOW"), in turn, describes the project scope as "Eighteen (18) Month PreciouStatus Software License for up to 1,100 Children/Center." Under "PAYMENT," the SOW states that LCG shall pay to PS "Up to 300 Children/Center = $299/annual subscription license[.] >300 Children/Center = $499/annual subscription license."

LCG alleges that it implemented the Monitoring Service in all of its 862 childcare facilities. During the course of performance, LCG renewed the annual subscription licenses for many of its facilities. PS issued invoices for annual subscription license renewals, and LCG paid those invoices. According to LCG, upon payment of each invoice (with the most recent invoice issuing on April 1,

2017), the respective childcare facility was to receive the Monitoring Service for one year.

According to the Complaint, in February 2017, PS informed LCG that it would be increasing the price of the Monitoring Service by roughly 400%. LCG refused to pay the increased price, and PS refused to lower its proposed increased price. LCG informed PS that it would not renew its subscriptions with PS after the expiration of each facility's license term. In response, PS informed LCG that it would terminate the Monitoring Service at all LCG facilities on May 31, 2017. According to LCG, PS's notice constitutes an anticipatory breach of the Agreement because PS is contractually obligated to continue providing the Monitoring Service until the expiration of each facility's license (one year after each facility's subscription or renewal) for which LCG has already paid

According to LCG, the Monitoring Service is integral to LCG's business and its ability to comply with childcare licensing laws and regulations. LCG asserts that the childcare industry is very competitive, and the Monitoring Service sets LCG apart. In order to maintain the level of consistency, trust, and reliability that its customers have come to expect, LCG must maintain the practice of providing parents and guardians with instant, real-time updates and emergency notifications about their children. LCG further asserts that the Monitoring Service is included in its tuition fees, and a breach by PS will subject LCG to liability for contractual and

3

tort claims by parents and guardians. According to the Complaint, LCG will also suffer loss of goodwill, harm to its reputation, and harm to its relationships with its customers.

LCG asserts that it is not possible for it to obtain replacement services before May 31, 2017.

## II. MOTION FOR TEMPORARY RESTRAINING ORDER

### A. Standard of Review

Rule 65(b) of the Federal Rules of Civil Procedure provides a court with authority to issue a temporary restraining order as follows.

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

A temporary restraining order is an extraordinary remedy generally reserved for emergency situations in which the movant may suffer irreparable harm during the time required to give notice to the adverse party or where such notice may precipitate the harm. *See Hambell v. Alphagraphics Franchising Inc.*, 779 F. Supp. 910, 912-13 (E.D. Mich. 1991). Rule 65(b) is clear that the possibly drastic

4

consequences of a restraining order mandate careful consideration by a trial court faced with such a request. 1966 Advisory Committee Note to Rule 65(b). Before a court may issue a temporary restraining order, it should be assured that the movant has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice. *See Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969); 11 Wright & Miller, Fed. Practice and Procedure § 2951, at 504-06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party, and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507-08; *Workman v. Bredesen*, 486 F.3d 896, 904-05 (6th Cir. 2007).

### B. Irreparable Injury

It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1991). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-12.

LCG alleges that a temporary restraining order is necessary to avoid harm to its reputation and goodwill as well as exposure to contract and tort liability. If PS terminates the Monitoring Service, LCG contends that its facilities will not be able

5

to provide real-time communications to customers; LCG's reputation and public image will be irreparably harmed; and its relationship with its customers will be permanently injured. The Court acknowledges that termination of the Monitoring Service could damage LCG's business reputation. However, PS's alleged anticipatory breach of contract is not so irreparable that it could not be remedied by money damages. *See Fischer Am., Inc. v. PM Plastics Ltd*, No. 14-11269, 2014 WL 12573973, at *2 (E.D. Mich. Mar. 28, 2014). Nor has LCG offered any evidence that it could not mitigate the potential harm by paying the increased price that PS has demanded while securing a new provider, and then litigating the contract dispute. *See id.* As in *Fischer*, "it appears that the plaintiff is entirely in control of avoiding the cascade of horribles that it is attempting to parlay into an argument for irreparable harm. The dispute appears to boil down to nothing more than a disagreement over price." *Id.* The Court finds that LCG has not shown that immediate and irreparable injury will result before PS can be heard in opposition.

### C. Certification

As to the certified notice requirement under Rule 65(b)(1)(B), LCG's counsel did not submit any such certification.

LCG does not indicate that it sought, but did not obtain, concurrence in the relief requested in its Motion. Nor does LCG indicate that it served PS with a copy of the Complaint, the Motion, or the supporting brief.

The Court concludes that entry of a temporary restraining order before providing PS an opportunity to be heard would not be appropriate. LCG's Motion for Temporary Restraining Order is denied.

**III. ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

LCG also seeks an Order to Show Cause Why a Preliminary Injunction Should Not Issue. Local Rule 65.1 provides that a request for a preliminary injunction must be made by a separate motion and not by an order to show cause. E.D. Mich. L.R. 65.1. LCG may file a separate motion for preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure, which requires notice to the adverse party. Fed. R. Civ. P. 65(a).

**IV. CONCLUSION**

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff Learning Care Group, Inc.'s Motion for Temporary Restraining Order (Doc # 5) is DENIED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: May 4, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 4, 2017, by electronic and/or ordinary mail.

                                 S/LaShawn R. Saulsberry
                                 Case Manager